[Crim. No. 3091. First Dist., Div. Two. Dec. 14, 1954.]

In re SHIRLEY ANN FLODSTROM, on Habeas Corpus.*

Byron J. Snow, Steven P. Gazzera and Sidney L. Berlin for Petitioner.

Edmund G. Brown, Attorney General, Clarence A. Linn, Chief Assistant Attorney General, Raymond M. Momboisse, Deputy Attorney General, and N. J. Menard, District Attorney (Santa Clara), for Respondent.

*Reporter's note: This opinion was set aside on January 12, 1955, by an order of the Supreme Court granting a hearing. By an opinion filed on October 21, 1955, the Supreme Court determined that the hearing had been improperly granted (see *In re Flodstrom*, 45 Cal.2d ——, 288 P.2d 859), and the effect was to reinstate the opinion of the District Court of Appeal.

KAUFMAN, J.—Petitioner, Shirley Ann Flodstrom, seeks discharge from custody pursuant to a writ of habeas corpus issued out of this court on the ground that she is being held to answer for the crime of murder without a showing of reasonable and probable cause. Petitioner alleges that she was arrested on October 12, 1954, and a complaint was filed in the Municipal Court for the San Jose-Alviso Judicial District, County of Santa Clara, charging her with murder. A preliminary examination followed in the municipal court on October 22, 1954, after which petitioner was held to answer to the superior court. On October 29, 1954 an information was filed in the superior court charging her with a violation of Penal Code, section 187. On November 5, 1954, at petitioner's arraignment her attorney moved to set aside the information pursuant to Penal Code, section 995, paragraph 2. (Defendant committed without reasonable or probable cause.) This motion was denied on November 12, 1954, by the superior court judge. No prior application has been made for a writ of habeas corpus.

Attached to the petition as Exhibit A is the testimony taken at the preliminary hearing on October 22, 1954. The events which culminated in the detention of petitioner are presented in this testimony. It appears that the only witness to testify at the hearing was a detective in the police department. He testified on direct examination that he went to the home of petitioner on October 6, 1954, and there viewed the dead body of David Flodstrom, 6 months old, the son of petitioner. He further testified that the petitioner then told him that she found the sleeve of the pajama top crammed in the baby's mouth. According to the testimony, on October 7, 1954, this police officer again went to petitioner's home accompanied by the deputy coroner. Both of these officers questioned petitioner at that time. The police officer further testified that the petitioner was brought to the police station on October 12, 1954, where she confessed to the crime charged and signed a written statement to that effect. The police officer testified that petitioner told him that she crammed the pajama sleeve in the baby's mouth with her fingers because she was angry with her husband and wished to get even with him.

On cross-examination the police officer testified that when he arrived at the petitioner's house on October 6, he found the deceased baby lying on his back in his crib; that there were no indications or signs of violence on the child visible to

him; that he did not see the pajama sleeve in the baby's mouth; that one sleeve of the pajama top was damp and had two small blood spots on it; that he called the coroner.

At the end of the preliminary hearing petitioner's attorney moved to dismiss the complaint on the ground that the State had not established the corpus delicti. This motion was denied.

Petitioner contends that she is held without probable cause in that there was no proper showing of the corpus delicti at the preliminary hearing. More specifically it is asserted that aside from the extrajudicial statements of the accused which ought not to have been admitted at the preliminary hearing there was no showing that the death was accomplished by means of a criminal agency. ▮ Petitioner's position that such extrajudicial statements cannot be considered in the first instance to determine if the corpus delicti has been shown prima facie is supported by authority. In *Hall* v. *Superior Court* (1953), 120 Cal.App.2d 844 [262 P.2d 351], it was held that if the only evidence of a homicide produced at a preliminary examination comprises extrajudicial statements of the accused, he is held to answer without reasonable or probable cause. In that case the autopsy surgeon testified that the death was caused by a ruptured liver and that in his opinion the rupture was caused by a blow of some sort. In spite of this testimony the court felt that it was not shown that the rupture was due to any unlawful or criminal act. Thus it could be argued that the facts of the Hall case go further than those in the case at hand in indicating a criminal agency and yet the court felt that this was not a sufficient showing. It is significant that the coroner in the instant case apparently examined the body and yet was not called to testify at the preliminary hearing. It would seem that if there were indications that death was caused by a criminal agency the coroner would be the best witness to testify to this fact. If the omission of his testimony was inadvertent it can in all likelihood be supplied by the district attorney in another proceeding brought to charge petitioner with this crime.

In *People* v. *Eldridge,* 3 Cal.App. 648 [86 P. 832], the defendant was convicted of manslaughter. He had confessed the killing of his infant child. The record, independently of his confession, showed that the defendant at the insistence of his wife, administered four drops of chloroform, which he dropped on a handkerchief and then placed the handkerchief

on the child's face and after removing the handkerchief found the baby dead. The evidence further showed that the amount of chloroform used would not produce death. A post-mortem examination revealed nothing as indicating a violent or unnatural death. The appellate court reversed the conviction holding there was no satisfactory evidence of the corpus delicti.

The attorney general relies on *People* v. *McMonigle* (1947), 29 Cal.2d 730 [177 P.2d 745] for the proposition that the confession may be considered in support of the corpus delicti. However, it is apparent from the language used by the court in the McMonigle case that it is consistent with the position contended for by petitioner. At page 738 the court approved. as a correct statement of the law an instruction to the effect that: ". . . the corpus delicti for every criminal case must be proven by satisfactory evidence aside from any statement, confession or admission of the defendant. . . . After the latter however have been received in evidence they may strengthen and fortify the proof of the corpus delicti. . . ." Thus although a confession may be considered by the jury to *support* the corpus delicti, the corpus delicti must be shown to some extent independently of a confession before the accused can be held to answer for a crime. The district attorney seems to admit this rule by his excerpt from *People* v. *Selby* (1926), 198 Cal. 426 [245 P. 426], to the effect that after prima facie proof of the corpus delicti the statements of the accused may be admitted and considered by the jury to determine if the accused is guilty of the crime charged beyond a reasonable doubt.

The more recent cases dealing with the problem of admitting extrajudicial statements of the accused have established that although the order of proof is discretionary and may be varied, nevertheless there must be some showing of the corpus delicti before such statements can be admitted. Typical of this line of authority is *People* v. *Cullen* (1951), 37 Cal.2d 614 [234 P.2d 1], in which it was stated on page 624: "It is the settled rule, however, that the corpus delicti must be established independently of admissions of the defendant. Conviction cannot be had on his extrajudicial admissions or confessions without proof *aliunde* of the corpus delicti; but full proof of the body of the crime, sufficient to convince the jury of its conclusive character, is not necessary before the admissions may be received. A prima facie showing that the alleged victims met death by a criminal

agency is all that is required. The defendant's extrajudicial statements are then admissible, the order of proof being discretionary, and together with the prima facie showing must satisfy the jury beyond a reasonable doubt.'' The above case is of course concerned with the proof presented to the jury and does no violence to the rule that before one can be held to answer for a crime and stand trial there must be a prima facie showing of the corpus delicti independent of any extrajudicial statements of the accused. (See *People* v. *Schuber*, 71 Cal.App.2d 773 [163 P.2d 498].)

 It is our view that the corpus delicti has not been established. Disregarding the confession and admissions of the accused there is no proof, even slight, of any criminal agency that caused the death of the infant child.

Accordingly we must hold that the petitioner was held to answer without reasonable and probable cause and that she is entitled to be discharged from custody.

Ordered petitioner discharged from custody.

Dooling, J., concurred.